**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **SHANDON BELL**, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**BH SECURITY, LLC d/b/a BRINKS HOME**,<br><br>Defendant. | Case No. 3:26-cv-2538<br><br>**DEMAND FOR JURY TRIAL** |

# CLASS ACTION COMPLAINT

Plaintiff Shandon Bell, on behalf of herself and all others similarly situated, brings this Class Action Complaint (the "Action") against BH Security, LLC d/b/a Brinks Home ("Brinks" or "Defendant"), and alleges upon personal knowledge as to herself and her own actions, and upon information and belief as to all other matters, as follows:

## I. NATURE OF THE ACTION

1. Plaintiff brings this Class Action Complaint against Defendant for its failure to secure and safeguard the personally identifiable information ("PII" or the "Private Information") of its current and former customers and employees, which was entrusted to Defendant.

2. Brinks is a residential security company providing smart home automation and professional alarm monitoring.

3. On or about July 22, 2026, Brinks reported that it had experienced a cyberattack on its computer networks. This cyberattack resulted in the breach and/or compromise of certain files

containing the sensitive personal data of Plaintiff and at least tens of thousands of other individuals, including but not necessarily limited to their Private Information (the "Data Breach").

4. Defendant, as a substantial business with significant resources, had the resources available to take seriously the obligation to protect the Private Information entrusted to it. However, Defendant failed to invest the resources necessary to protect the Private Information of Plaintiff and Class members.

5. The actions of Defendant related to this Data Breach are unconscionable. Upon information and belief, Defendant failed to implement practices and systems to mitigate against the risks posed by its negligent (if not reckless) information-technology practices. As a result of these failures, Plaintiff and Class members face a litany of harms that accompany data breaches of this magnitude and severity.

6. As such, Plaintiff, on behalf of herself and all others similarly situated, brings this Action for restitution, actual damages, nominal damages, statutory damages, injunctive relief, disgorgement of profits, and all other relief that this Court deems just and proper.

## II. JURISDICTION AND VENUE

7. This Court has jurisdiction over the subject matter of this Action pursuant to 28 U.S.C. § 1332(d), as provided by the Class Action Fairness Act, because: this is a civil action filed under Rule 23 of the Federal Rules of Civil Procedure; the amount in controversy exceeds $5,000,000, exclusive of interest and costs; the proposed Class consists of more than 100 members; and members of the Class are citizens of states different from Defendant.

8. This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business at 1501 Lyndon B. Johnson Freeway, Suite 700, Farmers Branch, Texas, within this District, because Defendant resides in and regularly transacts business in the

State of Texas, and because a substantial part of the events, omissions, and acts giving rise to this Action occurred in the State of Texas.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this District, and pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## III. PARTIES

10. Plaintiff is, and at all times relevant to this Action was, a resident and citizen of the State of Texas, residing in Dallas, Texas. Plaintiff is a former employee of Defendant. Plaintiff entrusted Defendant with her Private Information. Plaintiff's Private Information was compromised in the Data Breach.

11. Defendant Brinks is a Delaware limited liability company with its principal place of business at 1501 Lyndon B. Johnson Freeway, Suite 700, Farmers Branch, Texas. Defendant's registered agent is Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company located at 211 E. 7th Street, Suite 620, Austin, Texas.

## IV. FACTUAL ALLEGATIONS

### A. *Defendant's Business and Collection of Private Information*

12. Brinks is a residential security company providing smart home automation and professional alarm monitoring services throughout the United States.

13. Plaintiff and the other Class members are current and former customers and employees of Defendant who entrusted Defendant with their extremely sensitive and highly valuable Private Information, which Defendant acquired and maintained in the course of providing them services and/or employment.

14. In turning over their Private Information, Plaintiff and Class members reasonably expected that Defendant would safeguard their highly sensitive and valuable information and would make only authorized disclosures of this Private Information.

15. By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class members' Private Information, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for ensuring the safety and security of Plaintiff's and Class members' Private Information and for protecting such Private Information from unauthorized disclosure and exfiltration.

B. ***The Data Breach***

16. On or about July 22, 2026, Brinks reported that it had experienced a cyberattack on its computer networks. This cyberattack resulted in the breach and/or compromise of certain files containing the sensitive personal data of Plaintiff and at least tens of thousands of other individuals, including but not necessarily limited to their Private Information.

17. The Data Breach occurred when cybercriminals infiltrated Defendant's inadequately protected network servers and accessed the highly sensitive Private Information being maintained there.

18. Not only do Plaintiff and Class members have to contend with the harms caused by the Data Breach, but Defendant's response to the Data Breach has been woefully insufficient.

19. On information and belief, the Private Information accessed by the cybercriminals was not encrypted. In any event, the cybercriminals were able to access the Private Information described above.

20. The access and acquisition of the Private Information from Defendant's systems demonstrates that this cyberattack was targeted due to Defendant's status as a business that houses

sensitive Private Information. Armed with this Private Information, data thieves (as well as downstream purchasers of the stolen Private Information) can commit a variety of crimes, including: opening new financial accounts in Class members' names; taking out loans in Class members' names; using Class members' information to obtain government benefits; filing fraudulent tax returns using Class members' identifying information; obtaining driver's licenses in Class members' names but with different photographs; and giving false information to police during an arrest.

21. Due to Defendant's flawed security measures and Defendant's incompetent (and perhaps even nonexistent) response to the Data Breach, Plaintiff and Class members now face a present, substantial, and imminent risk of fraud and identity theft, and must deal with that threat for years to come.

22. Despite widespread knowledge of the dangers of identity theft and fraud associated with cyberattacks and the unauthorized disclosure of Private Information, and despite Defendant's large operating budgets, Defendant maintained unreasonably deficient protections prior to the Data Breach, including but not limited to a lack of adequate security measures for storing and handling Private Information, as well as inadequate employee training regarding how to access, oversee the protection of, handle, and safeguard this sensitive set of information.

23. Defendant's failures caused the unpermitted disclosure of Plaintiff's and Class members' Private Information to unauthorized third-party cybercriminals, and have put Plaintiff and Class members at serious, immediate, and continuous risk of identity theft and fraud.

C. ***The Data Breach Was Foreseeable***

24. Defendant has weighty obligations created by industry standards, common law, and its own promises and representations to keep Private Information confidential and to protect it from unauthorized access and disclosure.

25. Plaintiff and Class members provided their Private Information to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

26. Defendant's data security obligations were particularly acute given the substantial increase in hacks, malware threats, ransomware attacks, and other data breaches affecting businesses—including large companies such as Defendant—in the period preceding the Data Breach.

27. Defendant was aware of the risk of data breaches because such breaches have dominated the headlines in recent years, including high-profile breaches at companies such as Equifax, Marriott, Yahoo, and many others.

28. Private Information, like the Private Information targeted by the cybercriminals in this Action, is of great value to hackers and cybercriminals, and the data compromised in the Data Breach can be used in a variety of unlawful manners. Given the nature of the Data Breach, it is foreseeable that the compromised Private Information can now be used by hackers and cybercriminals in a variety of harmful ways, including obtaining Plaintiff's and Class members' tax returns or opening fraudulent credit cards or other accounts in their names.

29. As such, this Data Breach was foreseeable. Defendant was cognizant of the substantial risk of data breaches because of how common and high-profile data breaches have become with respect to businesses that have custody of Private Information, such as Defendant.

D. ***Defendant Failed to Follow FTC Guidelines and Industry Standards***

30. Experts studying cybersecurity routinely identify businesses that collect and maintain large volumes of employee and consumer data as being particularly vulnerable to cyberattacks because of the value of the data they hold. The reason this data is so valuable is that it contains sensitive details such as the Private Information, which can be sold and weaponized for purposes of committing various identity-theft-related crimes. It is well known that businesses that collect, store, maintain, and otherwise profit from Private Information must take necessary cybersecurity safeguards to ensure that the data they possess is adequately protected.

31. Government agencies highlight the importance of cybersecurity practices. For example, the Federal Trade Commission ("FTC") has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

32. In its publication Protecting Personal Information: A Guide for Business, the FTC established cybersecurity guidelines for businesses. The guidelines note that businesses should protect the personal information they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand network vulnerabilities; and implement policies to correct any security problems.

33. The guidelines also recommend that businesses use an intrusion-detection system to detect and expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating that someone is attempting to hack their systems; watch for large amounts of data being transmitted from their systems; and have a response plan ready in the event of a breach.

34. The FTC further recommends that companies not maintain Private Information

longer than is needed; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on their networks; and verify that third-party service providers have implemented reasonable security measures.

35. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect individuals' data, in some cases treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTCA").

36. Defendant failed to properly implement some or all of these (and other) basic data security practices. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

37. Defendant at all times was fully aware of its obligations to protect Private Information, given the reams of Private Information to which it had access. Defendant was also keenly aware of the significant repercussions that would result from a failure to do so.

38. Several best practices have been identified that, at a minimum, should be implemented by businesses such as Defendant that maintain Private Information, including but not limited to: educating all employees about cybersecurity; requiring strong passwords; maintaining multi-layer security, including firewalls, anti-virus programs, and anti-malware software; utilizing encryption; making data unreadable without a key; implementing multi-factor authentication; backing up data; and limiting which employees can access sensitive data.

39. These foregoing frameworks are existing and applicable industry standards. Defendant failed to comply with these accepted standards, thereby opening the door to and causing the Data Breach.

E. ***Defendant's Breaches of Its Obligations***

40. Defendant breached its obligations to Plaintiff and Class members and was otherwise negligent and/or reckless because Defendant failed to properly maintain, oversee, and safeguard its computer systems, networks, and data. In addition to its obligations under federal and state law, Defendant owed a duty to Plaintiff and Class members to exercise reasonable care when obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession from being compromised, lost, stolen, accessed, or misused by unauthorized persons. Defendant owed a duty to Plaintiff and Class members to provide reasonable security, including complying with industry standards and requirements, providing training for its personnel, and ensuring that its computer systems, networks, and protocols adequately protected the Private Information of Plaintiff and Class members.

41. Defendant's wrongful conduct includes, but is not limited to, the following acts and omissions:

a. Failing to maintain an adequate data security system to reduce the risk of data breaches and cyberattacks;

b. Failing to adequately protect Plaintiff's and Class members' Private Information;

c. Failing to implement updates and patches in a timely manner;

d. Failing to properly monitor its data security systems for existing intrusions, brute-force attempts, and clearing of event logs;

e. Failing to ensure that all employees and third parties apply all available and necessary security updates;

f. Failing to ensure that all employees and third parties practice the principle of least privilege and maintain credential hygiene;

g. Failing to adequately oversee employees and third-party vendors;

h. Storing Plaintiff's and Class members' Private Information longer than reasonably necessary, including after their employment ended; and

i. Failing to properly train and supervise employees and third parties in the proper handling of inbound emails and sensitive Private Information.

42. As a result of allowing their computer systems to fall into dire need of security upgrading, and its inadequate procedures for handling cybersecurity threats, Defendant negligently and wrongfully failed to safeguard Plaintiff's and Class members' Private Information.

43. Accordingly, as further detailed herein, Plaintiff and Class members now face a substantial, increased, and immediate risk of fraud, identity theft, and the disclosure of their most sensitive and deeply personal information.

F. ***Data Breaches Are Harmful and Disruptive***

44. The United States Government Accountability Office ("GAO") released a report in 2007 regarding data breaches (the "GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."

45. All victims of a data breach may be exposed to serious ramifications regardless of the nature of the data. The reason criminals steal Private Information is to monetize it, because there is (unfortunately) a market for Private Information, like the Private Information compromised by the Data Breach. Cybercriminals sell the spoils of their cyberattacks on the illegal market to

identity thieves who desire to extort and harass victims, and to take over victims' identities in order to engage in illegal financial transactions under the victims' names.

46. Armed with only a name and a Social Security number, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information regarding a victim's identity, such as the victim's login credentials. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls, deceptive text messages, and phishing emails.

47. Unlike a credit or debit card number, which can be canceled and reissued, a Social Security number cannot easily be replaced. Even when a Social Security number is replaced, the process of doing so results in major inconvenience to the affected person and does not undo the harm, because other governmental agencies and private businesses likely will retain records under the old number.

48. Because of the threat of these harms, the FTC recommends that identity-theft victims take several steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert, reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, purchasing credit monitoring, and correcting their credit reports.

49. Theft of Private Information is gravely serious. Private Information is an extremely valuable property right, the value of which is axiomatic considering the value of "big data" in corporate America. According to the GAO, stolen data may be held for up to a year or more before being used to commit identity theft, and once stolen data has been sold or posted on the web, fraudulent use of that information may continue for years.

50. Private Information remains of high value to criminals, as evidenced by the prices paid through the dark web. Numerous sources cite dark-web pricing for stolen identity credentials; for example, certain sets of Private Information can be sold at prices ranging from $40 to $200, and “fullz” packages containing complete identity profiles command even higher prices. Social Security numbers and government-issued identification numbers, both of which were compromised in this Data Breach, are particularly valuable.

51. Because the Private Information compromised in the Data Breach has been exfiltrated and exposed to cybercriminals, Plaintiff and Class members are at a substantial and imminent risk of injury, including an increased risk of fraud and identity theft for many years into the future. Thus, Plaintiff and Class members must vigilantly monitor their financial accounts and other indicators of identity theft for many years to come.

G. ***Harm to Plaintiff and the Class***

52. Plaintiff and Class members suffered actual injury from having their Private Information compromised as a result of the Data Breach, including but not limited to: (a) the misuse of their compromised Private Information; (b) damage to and diminution in the value of their Private Information, a form of property that Defendant obtained from Plaintiff and Class members; (c) violation of their privacy, including the compromise of highly sensitive Private Information; (d) present, imminent, and impending injury arising from the increased risk of identity theft and fraud; and (e) actual and potential out-of-pocket losses, including the loss of time and the loss of money.

## V. CLASS ALLEGATIONS

53. Plaintiff brings this nationwide class action on behalf of herself and all others similarly situated pursuant to Rules 23(b) and 23(c) of the Federal Rules of Civil Procedure. The "Class" that Plaintiff seeks to represent is defined as follows:

> All persons whose Private Information was maintained by Defendant and was compromised in the Data Breach.

54. Excluded from the Class are Defendant and Defendant's subsidiaries, affiliates, officers, and directors; any entity in which Defendant has a controlling interest; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

55. Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

56. **Numerosity**. Upon information and belief, and as reflected in the cybercriminals' own claims, the Data Breach compromised the Private Information of tens of thousands of individuals. Therefore, the members of the Class are so numerous that joinder of all members is impracticable. The exact size of the Class and the identities of the individual members are ascertainable through Defendant's records, including the files implicated in the Data Breach.

57. **Commonality**. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

a. Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiff's and Class members' Private Information;

b. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c. Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

d. Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

e. Whether Defendant owed a duty to Plaintiff and Class members to safeguard their Private Information;

f. Whether Defendant breached its duties to Plaintiff and Class members to safeguard their Private Information;

g. Whether cybercriminals obtained Plaintiff's and Class members' Private Information in the Data Breach;

h. Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

i. Whether Plaintiff and Class members suffered legally cognizable damages as a result of Defendant's misconduct;

j. Whether Defendant's acts, inactions, and practices complained of herein amount to a breach of implied contract and/or common-law negligence, and whether Defendant has been unjustly enriched;

k. Whether Defendant failed to provide notice of the Data Breach in a timely and proper manner; and

l. Whether Plaintiff and Class members are entitled to compensatory damages, exemplary damages, punitive damages, civil penalties, equitable relief, and/or injunctive relief.

58. **Typicality**. Plaintiff's claims are typical of those of other Class members because Plaintiff's Private Information, like that of every other Class member, was compromised in the Data Breach. Further, Plaintiff, like all Class members, was injured by Defendant's uniform conduct. Plaintiff is advancing the same claims and legal theories on behalf of herself and all other Class members, and there are no defenses that are unique to Plaintiff. The claims of Plaintiff and the other Class members arise from the same operative facts and are based on the same legal theories.

59. **Adequacy of Representation**. Plaintiff will fairly and adequately represent and protect the interests of the Class, and she has no disabling or disqualifying conflicts of interest that would be antagonistic to those of the other members of the Class. The damages and infringement of rights that Plaintiff suffered are typical of the other Class members, and Plaintiff seeks no relief that is antagonistic or adverse to the members of the Class. Plaintiff has retained counsel experienced in complex class action litigation, including data privacy class action litigation, and Plaintiff intends to prosecute this Action vigorously. Therefore, Plaintiff can and will fairly and adequately protect and represent the interests of the Class.

60. **Superiority of Class Action**. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, as the pursuit of numerous individual lawsuits would not be economically feasible for individual Class members, and certification as a class action will preserve judicial resources by allowing the Class's common issues to be adjudicated in a single forum, avoiding the need for duplicative hearings and discovery in

individual actions based upon an identical set of facts. Without a class action, it is likely that many members of the Class will remain unaware of the claims they may possess.

61. The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action. Adequate notice can be given to Class members directly using information maintained in Defendant's records.

62. **Predominance**. The issues in this Action are appropriate for certification because such claims present common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Defendant has engaged in a common course of conduct toward Plaintiff and Class members. The common issues arising from Defendant's conduct affecting Class members predominate over any individualized issues. Adjudication of these issues in a single action has the important and desirable advantages of judicial economy.

## COUNT I

## NEGLIGENCE

63. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

64. Defendant knowingly collected, acquired, stored, and maintained Plaintiff's and Class members' Private Information, and had a duty to exercise reasonable care in safeguarding, securing, and protecting that Private Information from being disclosed, compromised, lost, stolen, or misused by unauthorized parties.

65. This duty included obligations to take reasonable steps to prevent disclosure of the Private Information and to safeguard the information from theft. Defendant's duties included the

responsibility to design, implement, and monitor its data security systems, policies, and processes to protect against reasonably foreseeable data breaches such as this Data Breach.

66. Defendant owed a duty of care to Plaintiff and Class members to provide data security consistent with industry standards and the other requirements discussed herein, and to ensure that its systems and networks, its policies and procedures, and the personnel responsible for them adequately protected the Private Information.

67. Defendant owed a duty of care to safeguard the Private Information due to the foreseeable risk of data breaches and the severe consequences that would result from a failure to safeguard the Private Information.

68. Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and those individuals who entrusted Defendant with their Private Information as a condition of receiving services or employment, which duty is recognized by laws and regulations, including but not limited to the FTCA and the common law.

69. In addition, Defendant had a duty to employ reasonable security measures under Section 5 of the FTCA, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data. Defendant's violation of Section 5 of the FTCA constitutes negligence per se.

70. Defendant's duty to use reasonable care in protecting Private Information arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect Private Information that it acquires, maintains, or stores.

71. Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Plaintiff's and Class members' Private Information, as alleged and discussed above.

72. It was foreseeable that Defendant's failure to use reasonable measures to protect Plaintiff's and Class members' Private Information would result in injury to Plaintiff and Class members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches against companies that have custody of Private Information.

73. The imposition of a duty of care on Defendant to safeguard the Private Information it maintained is appropriate because any social utility of Defendant's conduct is outweighed by the injuries suffered by Plaintiff and Class members as a result of the Data Breach.

74. As a direct and proximate result of Defendant's negligence and negligence per se, Plaintiff and Class members are at a current and ongoing imminent risk of identity theft and have sustained compensatory damages, including: (i) invasion of privacy; (ii) financial out-of-pocket costs incurred mitigating the materialized risk and imminent threat of identity theft; (iii) loss of time and loss of productivity incurred mitigating the material risk and imminent threat of identity theft; (iv) financial out-of-pocket costs incurred due to actual identity theft; (v) loss of time incurred due to actual identity theft; (vi) loss of time due to increased spam and targeted marketing communications; (vii) diminution of value of their Private Information; (viii) future costs of identity theft monitoring and/or credit monitoring; (ix) anxiety, annoyance, and nuisance; and (x) the continued risk to their Private Information, which remains in Defendant's and the threat actors' respective control and which is subject to further breaches for so long as Defendant fails to undertake appropriate and adequate measures to protect it.

75. Plaintiff and Class members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

76. Defendant's negligent conduct is ongoing, in that Defendant still holds the Private Information of Plaintiff and Class members in an unsafe and unsecure manner.

77. Plaintiff and Class members are also entitled to injunctive relief requiring Defendant to (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) provide adequate credit monitoring to all Class members.

## COUNT II

## BREACH OF IMPLIED CONTRACT

78. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

79. In connection with obtaining services or employment from Defendant, Plaintiff and Class members entrusted Defendant with their Private Information.

80. Defendant had an implied contract with Plaintiff and Class members that it would protect the Private Information it collected from them.

81. Plaintiff and Class members were required to deliver their Private Information to Defendant as part of the process of obtaining and maintaining services or employment. In doing so, they were of the belief that this information would be safely guarded.

82. Defendant accepted possession of Plaintiff's and Class members' Private Information for the purpose of providing services or employing them.

83. Through Defendant's provision of services or employment of Plaintiff and Class members, Defendant knew or should have known that it must protect Plaintiff's and Class

members' confidential Private Information in accordance with Defendant's stated policies and industry best practices.

84. Pursuant to these implied contracts, Defendant agreed to certain implied promises to Plaintiff and Class members, including but not limited to: (1) taking steps to ensure that anyone granted access to Private Information also protects the confidentiality of that data; (2) taking steps to ensure that the Private Information in the control of Defendant's employees is restricted and limited to achieve only authorized business purposes; (3) restricting Private Information access only to employees and agents who are qualified and trained; (4) designing and implementing appropriate retention policies to protect Private Information; (5) applying or requiring proper encryption and the separation of different data sets containing Private Information; (6) implementing multi-factor authentication for access to Private Information; and (7) taking other steps to protect against foreseeable breaches.

85. By entering into such implied contracts, Plaintiff and Class members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations and were consistent with industry standards.

86. Defendant violated these implied contracts and implied promises by failing to employ reasonable and adequate security measures to secure Plaintiff's and Class members' Private Information, and by failing to delete that Private Information once their relationship ended.

87. Plaintiff's and Class members' Private Information would not have been entrusted to Defendant in the absence of Defendant's implied promise to monitor its computer systems and networks to ensure that it adopted reasonable data security measures.

88. Plaintiff and Class members fully and adequately performed their obligations under their implied contracts with Defendant.

89. Plaintiff and Class members have been damaged by Defendant's conduct, including the harms and injuries arising from the Data Breach now and in the future, as alleged herein. Plaintiff and Class members seek damages, including restitution, actual damages, nominal damages, and any other awardable form of damages, in an amount to be proven at trial.

**COUNT III**

**UNJUST ENRICHMENT**

90. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

91. This count is asserted in the alternative to breach of implied contract (Count II).

92. As customers and employees of Defendant, Plaintiff and Class members conferred a benefit on Defendant, whereby their Private Information was provided to Defendant.

93. Defendant, prior to and at the time Plaintiff and Class members entrusted it with their Private Information, caused Plaintiff and Class members to reasonably believe that Defendant would keep that Private Information secure.

94. The monies Defendant was paid or other consideration exchanged in its ordinary course of business included a premium for Defendant's cybersecurity obligations that were supposed to be used by Defendant, in part, to pay for the administrative and other costs of providing reasonable data security and protection for Plaintiff's and Class members' Private Information.

95. Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class members' Private Information. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant calculated to increase its own profits at the expense of Plaintiff and Class members by utilizing cheaper, ineffective security measures. Plaintiff and Class members, on the other hand, suffered

as a direct and proximate result of Defendant's decision to prioritize its own profits over the requisite security.

96. Under the principles of equity and good conscience, Defendant should not be permitted to retain the benefits conferred upon it by Plaintiff and Class members, because Defendant failed to implement the appropriate data management and security measures mandated by industry standards.

97. Defendant acquired and retained the Private Information through inequitable means in that it failed to disclose its inadequate security practices, and failed to disclose facts pertaining to their substandard information systems, or the defects and vulnerabilities therein, before Plaintiff and Class members provided Defendant with their Private Information.

98. Plaintiff and Class members have no adequate remedy at law.

99. As a direct and proximate result of Defendant's conduct, Plaintiff and Class members have suffered and will suffer injury, including but not limited to: (a) actual identity theft; (b) the loss of the opportunity to control how their Private Information is used; (c) the compromise, publication, and/or theft of their Private Information; (d) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and unauthorized use of their Private Information; (e) lost-opportunity costs and loss of productivity associated with efforts to mitigate the actual and future consequences of the Data Breach; (f) the continued risk to their Private Information, which remains in Defendant's possession; and (g) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class members.

100. Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class members, the proceeds that Defendant unjustly received from them.

**COUNT IV**

**DECLARATORY JUDGMENT**

101. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

102. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights, statuses, and legal relations of the parties and to grant further necessary relief. The Court also has broad authority to restrain acts, such as those here, that are tortious and violate the terms of federal and state law as described in this Complaint.

103. An actual controversy has arisen in the wake of the Data Breach regarding Plaintiff's and Class members' Private Information and whether Defendant is currently maintaining data security measures adequate to protect Plaintiff and Class members from further data breaches that compromise their Private Information. Plaintiff alleges that Defendant's data security measures remain inadequate. Plaintiff continues to suffer injury as a result of the compromise of her Private Information and remains at imminent risk that further compromises of her Private Information will occur in the future.

104. Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. Defendant owes a legal duty to secure Private Information and to timely notify impacted individuals of a data breach under the common law and state statutes; and

b. Defendant continues to breach this legal duty by failing to employ reasonable measures to secure the Private Information in its possession.

105. This Court also should issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with law and industry standards to protect the Private Information in Defendant's data networks.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on her own behalf and on behalf of all others similarly situated, prays for relief as follows:

A. For an Order certifying this case as a class action and appointing Plaintiff and her counsel to represent the Class;

B. For an award of actual damages, exemplary damages, punitive damages, compensatory damages, statutory damages, and nominal damages, in an amount to be determined, as allowable by law;

C. For injunctive and other equitable relief to ensure the protection of the sensitive information of Plaintiff and the Class, which remains in Defendant's possession, including an award of credit monitoring and identity theft protection services;

D. For an award of attorneys' fees and costs, and any other expenses, including expert witness fees;

E. For pre- and post-judgment interest on any amounts awarded; and

F. For such other and further relief as the Court may deem just and proper.

## VII. JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: July 30, 2026

Respectfully submitted,

By: */s/ Camile Alvarez*

Camile Alvarez (SBN: 24148788)
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N. Michigan Ave., Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
calvarez@straussborrelli.com

*Counsel for Plaintiff and the Proposed Class*